IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE,
NASHVILLE DIVISION

BURT SHEARER TRUSTEE, as )
trustee of the SHEARER FAMILY )
LIVING TRUST, on behalf of Nominal )
Defendant, NATIONAL HEALTH )
INVESTORS, INC., )
)
      Plaintiff, )
)
v. )
)
W. ANDREW ADAMS, et al. )
)
      Defendants; and )
)
NATIONAL HEALTH )
INVESTORS, INC., )
)
      Nominal Defendant. )

Case No. 3:09-cv-991
JUDGE HAYNES

## MEMORANDUM

Plaintiff, Burt Shearer, as trustee of the Shearer Family Living Trust and shareholder of National Health Investors, Inc. ("NHI"), filed this derivative action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: W. Andrew Adams, Robert A. McCabe, Jr., Robert T. Webb and Ted H. Welch, officers and/or members of NHI's board of directors. Plaintiff's claims arise under state law based upon factual allegations that the individual Defendants engaged in a multi-year illicit financial scheme involving Care Foundation of America, Inc., ("CFA"), a non-profit entity controlled by the individual Defendants. Plaintiff's complaint alleges, among other things, that the individual Defendants approved NHI's purchase of six nursing homes over their market value and paid above market interest rates and fees in these transactions. Plaintiff alleges that the Defendants' misconduct caused CFA to file an action against NHI, in which the Tennessee Attorney General intervened on CFA's behalf.

1

Before the Court is the Defendants' motion to dismiss (Docket Entry Nos. 27 and 29), contending, in sum, that Plaintiff failed to make a legally sufficient demand upon NHI's Board of directors, as required by Maryland law, to identify the alleged wrongdoers, to describe the factual basis for each individual's wrongful acts and the harm caused by the corporation, and to request remedial relief.

In response, Plaintiff asserts that his demand served on the Defendants described: (1) the factual allegations about the individual Defendants' violations of their fiduciary duties by knowingly engaging in the illicit financial scheme involving CFA; (2) that those factual allegations include the individual Defendants' concealment of this scheme from NHI's shareholders; (3) that NHI's injuries are the costs, potential liability and settlement of the CFA and Tennessee Attorney General's litigation; and (4) that Plaintiff's demand was that NHI's Board take action against each of the individual Defendants to recover the damages from their alleged misconduct.

### A. Analyses of Plaintiff's Demand

NHI, a real estate investment trust ("REIT") is a Maryland corporation created under Maryland law. Pursuant to Maryland law, NHI's shareholders elected to impose strict limits on director liability in NHI's corporate Charter. The Maryland statute applies to the trustees of REITs.[1] Plaintiff's corrected amended complaint[2] identifies four "Individual Defendants" who are NHI directors or officers: Adams, Webb, Welch and McCabe. (Docket Entry No. 25, Corrected Amended Complaint at ¶¶ 14-17.). According to Plaintiff, "[t]he Individual

---

[1] William E. Knepper & Dan A. Bailey, Liability of Corporate Officers and Directors § 16.02 (7th ed. 2009) (hereinafter "Knepper & Bailey").

[2] Plaintiff filed three complaints in this action, (Docket Entry Nos. 1, 22 and 25), but the corrected amended complaint supercedes all prior complaints. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986).

2

Defendants, because of their positions of control and authority as directors and/or officers of [NHI], were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein." Id. at ¶ 20. McCabe became a NHI director after the January 2000 sale of the hospitals at issue. Id. at ¶ 15.

Although Plaintiff filed a lengthy corrected amended complaint, for the purposes of this motion, the dispositive issue is the legal sufficiency of Plaintiff's demand upon NHI under the applicable state law.[3] On February 5, 2009, Plaintiff's counsel served a pre-suit demand on NHI's Board of Directors, id. at ¶ 240, and that demand reads in its entirety as follows:

> This firm represents Burt Shearer, as trustee of the Shearer Family Living Trust, (the "Stockholder") a holder of shares of common stock of National Health Investors, Inc. ("NHI" or the "Company"). I write on behalf of the Stockholder to demand that the Board of Directors of NHI (the "Board") take action to remedy breaches of fiduciary duties by the directors and certain executive officers of the Company, as described herein.
>
> As you are aware, by reason of their positions as officers and/or directors of NHI and because of their ability to control the business and corporate affairs of NHI, the officers and directors of the Company owe NHI and its shareholders the fiduciary obligations of loyalty, good faith and due care. The Stockholder believes that the following officers and/or directors of the Company violated these core fiduciary duty principles, causing NHI to suffer damages: Chairman of the Board and Chief Executive Officer W. Andrew Adams; Chief Accounting Officer Roger R. Hopkins; and Directors Robert A. McCabe, Jr., Robert T. Webb and Ted H. Welch (collectively, the "Directors and Officers").
>
> The Stockholder contends that the Company, with knowledge and approval of the Directors and Officers, engaged in a multi-year illicit financial scheme against Care Foundation of America, Inc. ("Care Foundation"). This resulted in the filing of a lawsuit against NHI by Care Foundation in conjunction with its bankruptcy filing, as well as an ongoing investigation by the Tennessee State Attorney General.
>
> As you know, Care Foundation commenced litigation against NHI on January 2, 2009, seeking a declaratory judgment and asserting claims for breach of fiduciary duty, conversion, fraud and unjust enrichment. As you also know, Care Foundation alleges in its lawsuit that NHI orchestrated a scheme to convert, for its own use and benefit, over $25 million that rightfully belonged to Care Foundation by causing Care Foundation to pay (to date) approximately $40 million for nursing centers with a fair

---

[3] The Court does not engage in an analysis of Plaintiff's lengthy complaint so as to avoid the corrected amended complaint supplementing Plaintiff's demand that must be evaluated separately.

3

market value of approximately $23 million. NHI accomplished this by selling the nursing centers at well above market value, while simultaneously financing 100% of Care Foundation's purchase price through a mortgage note at an above market interest rate of 11.5% per annum. Additionally, NHI saddled Care Foundation with above market "supplemental payments;" annual $50,000 payments in "guarantor fees;" and the nursing centers purchased by Care Foundation became subject to liens reflecting the entire existing first and second mortgage indebtedness owed to NHI.

As you also know, Care Foundations alleges that this illicit activity occurred from as far back as Care Foundation's incorporation in 1999, and did not end until 2008 when the Tennessee Attorney General began its own investigation. Care Foundation alleges that NHI engineered its scheme, in part, to improperly expropriate for its own use and benefit Care Foundation's not-for-profit and tax exempt status and Medicaid reimbursement benefits. As you are also aware, Care Foundation has alleged that even though it purchased the nursing centers from NHI for over $32 million, NHI reported in its 1999 SEC 10-K filing that it received $25.9 million from a "third party" for the nursing centers. Further, NHI's 2000 SEC 10-K filing acknowledged for the first time that the purchaser was Care Foundation, but reiterated the selling price of $25.9 million. As you are further aware, the board of Care Foundation was completely under the control and influence of NHI until 2008, when the Attorney General's investigation commenced.

The Stockholder maintains that each of the Directors and Officers breached their fiduciary duties of loyalty and good faith by: (a) knowingly engaging in a multi-year illicit financial scheme; and (b) knowingly concealing the details of this scheme from the Company's stockholders.

The Directors' and Officers' systematic failure to properly manage the Company violates their fiduciary obligations of loyalty and good faith. As a result of the foregoing breaches of duty, NHI has sustained damages including, but not limited to: (a) the costs and potential liability that will be incurred as a result of the Care Foundation litigation; (b) the potential costs and liability that will be incurred as the result of the Tennessee Attorney General's investigation; and (c) loss of reputation and standing in the industry.

On behalf of the Stockholder, I hereby demand that the Board take action against each of the Directors and Officers to recover the damages described herein for the benefit of the Company and to correct the deficiencies in the Company's internal controls that allowed the misconduct to occur.

If within a reasonable period after receipt of this letter, the Board has not commenced an action as demanded herein, or in the event that the Board refuses to commence an action as demanded herein, the Stockholder will commence a shareholder derivative action on behalf of NHI seeking appropriate relief.

(Docket Entry No. 25-1 at 2-4).

4

In his corrected amended complaint (Docket Entry No. 25 at ¶¶ 242-243), Plaintiff alleges that an attorney responded to his demand, but the NHI board of directors did not. NHI's counsel's response[4] to Plaintiff "demand," on behalf of NHI stated, in relevant part as follows:

> NHI is a Maryland corporation. Under Maryland law, a shareholder's derivative demand must, among other things, describe the factual basis for believing that the named officers or directors are liable to the corporation. <u>Your letter, however, simply repeats claims CFA has made against NHI itself. CFA's complaint against NHI does not allege that any NHI director or officer breached their duty to NHI, and your letter does not describe the factual basis for the conclusory assertion that the directors and officers named in your letter have breached their duty to NHI.</u> So that NHI's board may properly evaluate and respond to Mr. Shearer's demand, the board has asked that I request from you any *facts* upon which you base the assertion that the officers and directors named in your letter are liable to NHI. Please provide me with any such facts, so that I may convey them to the board for consideration and a determination of what further action is appropriate.

(Docket Entry No. 27, Exhibit 1 thereto at 1) (emphasis in the original and added in part).

### B. Conclusions of Law

As a diversity action, this action is governed by the applicable state law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Because NHI is a Maryland corporation, Plaintiff's substantive claims are governed by Maryland law. Under Maryland law, for a shareholder derivative action, an adequate pre-suit demand is a substantive requirement. Werbowsky v. Collomb, 766 A.2d 123, 133-134 (Md. Ct. App. 2001); Grill v. Hoblizell, 771 F. Supp. 709, 711 (D. Md. 1991). See also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95-99 (1991). As a NHI shareholder, to sue on NHI's behalf, Plaintiff must first show that he served an adequate demand on NHI and NHI wrongfully refused to proceed after receiving his adequate demand. Werbowsky, 766 A.2d at 133-35.

The purpose of the shareholder's demand requirement is to prevent abuse of the derivative remedy and to avoid unwarranted intrusion on the corporate board's presumptive

---

[4] As discussed <u>infra</u>, the law of this Circuit permits consideration of NHI's counsel's letter.

5

control of the corporation, as well as the waste of corporate assets on ill-advised litigation. Werbowsky, 766 A.2d at 133-34. The demand requirement "affords the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such a right.'" Id. at 134 (quoting Kamen, 500 U.S. at 96). Moreover, under Maryland law, the corporate board members enjoy a presumption of acting in the corporation's best interest.

> The demand requirement is important. Directors are presumed to act properly and in the best interest of the corporation. They enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing. Nor should they, or the corporation, be put unnecessarily at risk by minority shareholders bent simply on mischief, who file derivative actions not to correct abuse as much to coerce nuisance settlements.

Werbowsky, 766 A.2d at 144 (emphasis in original). Once an adequate demand is served, the corporation's board must conduct an investigation of the allegations in the demand and determine whether to pursue the demanded litigation is in the corporation's best interests. Bender v. Schwartz, 917 A.2d 142, 152 (Md. Ct. App. 2007).

An exception to the pre-demand rule exists if requiring the demand would be futile because the board is incapable of independently investigating and deciding the course of action. Werbowsky, 766 A.2d at 134-135. Under Maryland law, a shareholder's demand waives any futility contention. Bender, 917 A.2d at 152 (shareholder making demand deemed to have waived any claim that board cannot independently act on the demand). See also Monda v. Mona Elec. Group, Inc., 934 A.2d 450, 466 (Md. Ct. App. 2005). Thus, by filing his action, Plaintiff has waived any futility contention.

6

Although Plaintiff has filed a lengthy complaint, the Court's analysis is limited to whether Plaintiff's demand on NHI was legally sufficient under Maryland law. In Bender, the Maryland Court of Special Appeals analyzed the sufficiency of a demand under its precedents:

> At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages. Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors.

Bender, 917 A.2d at 154.

"Each claim must be articulated specifically enough to give directors a fair opportunity to initiate the action requested by [the shareholder]." Id. (citation omitted). A shareholder seeking to bring a derivative action "must show more than mere suspicions and must state a claim in particular, rather than conclusory terms." Id. at 152 (citation omitted). In Bender, the Court affirmed dismissal of a derivative action, inter alia, because that pre-suit demand failed to allege specific facts for claims against directors. Id. at 154. These Maryland precedents are consistent with federal procedural law on derivative action. Federal Rules of Civil Procedure 23.1(b)(3)(A) and (B) require a complaint in a derivative action to "state with particularity" any effort by the plaintiff to obtain the desired action from the corporation's directors and the directors' reasons for not taking the action or not making the effort to do so.

To evaluate the legal sufficiency of Plaintiff's demand, the Court deems necessary a brief review of the history of Maryland corporation law to understand and evaluate the Plaintiff's demand and NHI's response to that demand.[5] A crisis arose in the market from corporate takeovers and financial distress in the banking and energy sectors that limited underwriting liability coverage of corporate directors and officers and raised concerns about increased

---

[5] Because Plaintiff's demand was a letter from his counsel, the Court deems NHI's counsel's letter to be NHI's response to Plaintiff's demand.

7

exposure to liability for corporate directors' decisions. James J. Hanks, Jr. & Larry P. Scriggins, Let Stockholders Decide: The Origins of the Maryland's Director and Officer Liability Statute of 1988, 18 U. Balt. L. Rev. 235, 235 (1989). Maryland response to this crisis was a series of laws on corporate director liability that chose from three potential options: (1) "charter option" statutes allowing stockholders to limit the personal liability of directors through corporate charter provisions; (2) "self-adjusting" the standard for director liability; and (3) statutory caps on money damages. Id. at 237-38.

Maryland's General Assembly elected the "charter option" and enacted the Director and Officer Liability Statute of 1988. Md. Code Ann. Corps. & Ass'ns § 2-405.2, incorporating Md. Code Ann. Cts. & Jud. Proc. § 5-418 (collectively hereinafter the "Maryland Statute"). Under this Statute, shareholders of Maryland corporations may opt-in through the charter option to immunize their directors from liability to the corporation or its shareholders, except where a director is adjudicated to have personally (1) received an improper benefit or (2) displayed "active and deliberate dishonesty" material to the claim. Md. Code Ann. Cts. & Jud. Proc. § 5-418(a)(1)-(2). The effect of these statutes were explained as follows:

> As a result of the Maryland Statute's two very limited exceptions for improper personal benefit or profit and for active and deliberate dishonesty, stockholders of a Maryland corporation may eliminate the liability of its directors and officers for a broad range of conduct — including not only simple and gross negligence, but also intentional misconduct, bad faith, ... and violations of law — as long as it does not constitute actual receipt of an improper benefit or profit, or active and deliberate dishonesty. ... The narrowness and precision of the Maryland Statute's two exceptions make it possibly the most expansive corporate liability limitation statute in the nation.

8

Let Stockholders Decide at 247. After the enactment of this statute and prior to the alleged accrual of Plaintiff's claim, NHI's shareholders chose to limit their directors' liability to the fullest extent permitted by Maryland law.[6]

For claims against the directors of a Maryland corporation, the Fourth Circuit equated the active and deliberate dishonesty standard under Maryland law with the standards for claims of fraud and breach of fiduciary duty. See Hayes v. Crown Cent. Petroleum Corp., 78 Fed. Appx. 857, 865 (4th Cir. 2003) (involving alleged false statements in a proxy statement to shareholders). Prior to the recent statute, Maryland law rejected a shareholder's derivative complaint that only "contains boilerplate allegations and does not distinguish among the directors and the roles which they allegedly played in the alleged wrongdoing [as] legally insufficient." Grill v. Hoblitzell, 771 F. Supp. 709, 712 (D. Md. 1991). As the Fourth Circuit includes Maryland, the Court adopts Hayes and Grill as the standard for Plaintiff's demand.

After review of Plaintiff's demand on NHI under these standards, the Court concludes that Plaintiff's demand did not identify each individual Defendant's specific acts. Plaintiff's complaint does not allege that any individual Defendant knew or believed that the proposed price was above fair market value. The demand's allegations of, "[t]he individual Defendants control over CFA" lacks any details about the knowledge, role, intentions, or actions of any individual NHI director. Plaintiff's allegation of "systematic failure to properly manage the Company," is a conclusory allegation. As in Grill, Plaintiff's demand contains boilerplate or conclusory allegations. 771 F. Supp. at 712. The Court agrees that Plaintiff's February 5, 2009 "demand" essentially restated CFA's allegations against NHI. The Plaintiff's demand's allegations of "bad

---

[6] As a public record, this Court may take judicial notice of NHI's Charter without converting this motion with a motion for summary judgment. New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003).

9

faith," mismanagement, or failure to correct improper conduct are insufficient for an actionable breach of fiduciary duty by a corporate director under Maryland law. Hays, 78 Fed. Appx. at 865; Let Stockholders Decide at 247. Plaintiff's lengthy corrected amended complaint of 65 pages underscores the inadequacy of the 3 page demand that the Court agrees essentially restates Plaintiff's description of CFA's allegations against NHI. The Court concludes that the Plaintiff's demand fails to state facts about the knowledge, role, intentions, or actions of any individual NHI directors, or whether a NHI director received any benefit from the alleged wrongdoing.

Finally, contrary to Plaintiff's allegation, NHI did not "completely ignor[e]" Plaintiff's demand, (Docket Entry No. 25 at ¶ 243). NHI's counsel notified Plaintiff's counsel of the factual deficiency in Plaintiff's demand that is consistent with Maryland law. NHI's counsel requested the specific facts for Plaintiff's assertion "[s]o that NHI's board may properly evaluate and respond to Mr. Shearer's demand." (Docket Entry No. 27, Exhibit 1 thereto). Plaintiff never responded to NHI's request.

For these reasons, the Court concludes that Plaintiff did not serve an adequate pre-suit demand upon NHI as required by Maryland law. Accordingly, the Defendants' motions to dismiss should be granted.

An appropriate Order is filed herewith.

ENTERED this the 21st day of September, 2010.

William J. Haynes, Jr.
United States District Judge